# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LARRY LEWIS,
    Petitioner,

vs.

WARDEN, TOLEDO CORRECTIONAL
INSTITUTION,[1]
    Respondent.

Civil Action No. 1:08-cv-114

Beckwith, J.
Hogan, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, a state prisoner, brings this case *pro se* seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This case is now before the Court upon the petition (Doc. 1) and respondent's return of writ and exhibits thereto. (Doc. 10).

## I. PROCEDURAL HISTORY

This case involves the following facts, as summarized by the First District Ohio Court of Appeals:[2]

> On the evening of April 1, 2005, Lewis and co-defendant Chaz Minor shot Berry to death for selling marijuana on their territory in the Fay Apartments. Lewis and Minor were tried together. At trial, Jamita Weaver and Geronimo Johnson identified Lewis as one of the perpetrators. Lewis's cellmate also testified that Lewis had admitted killing Berry.

> ### I. The Murder of Kevin "Fresh" Berry

> {¶ 3} Berry was known to sell high-quality marijuana in downtown Cincinnati. In March and April 2005, he began to sell it in the Fay Apartments, located in the Winton Terrace neighborhood of Cincinnati. A number of Fay Apartments denizens

---

[1] Since filing the petition, petitioner has been transferred to the Toledo Correctional Institution. (Doc. 9). Therefore, the proper respondent in this matter is the Warden of the Toledo Correctional Institution.

[2] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

also sold marijuana there, frequently from "candy stores," apartments from which they sold candy, snacks, cigarettes, and marijuana. Fay Apartments marijuana sellers were concerned about Berry "taking [their] licks," or selling drugs in their territory.

{¶ 4} Johnson lived in the Fay Apartments with his sister, Montoya. He ran a candy store from his sister's apartment. Lewis purchased cigars from their store. On the day before Berry died, and following an argument with Johnson's sister's ex-boyfriend, Hakeem, Lewis drew his .45-caliber handgun and engaged in a roving gun battle with Hakeem at the Fay Apartments. Lewis fired into the apartment occupied by Montoya.

{¶ 5} At trial, Johnson testified that on the night of the shooting, from the vantage point of his girlfriend's apartment window, he had observed Berry, Lewis, and a third man arguing. Lewis chided Berry, "You can't be up here." Berry explained that he was trying to leave. Johnson then saw Lewis approach Berry and draw a handgun from his clothing. As Johnson left the window to ensure that his girlfriend and her child were safe, he heard shots from two different guns. The first shots were very loud. After the shooting stopped, Johnson watched as Lewis and his companion looked over Berry's body "to see if the job was finished." Johnson did not report any of his observations to the police until two weeks later.

{¶ 6} Police expert witnesses testified that Berry died from shots to his heart inflicted by 7.62-mm rifle rounds. Minor was known to carry a 7.62-mm SKS assault rifle. While numerous .45-caliber shell casings were also found at the scene, no weapon was recovered.

{¶ 7} Weaver also lived at the Fay Apartments. She knew Minor and Lewis. She also had begun to purchase marijuana from Berry. At trial, Weaver testified that, on the evening of the murder, she had overheard Lewis complain to others at the Fay Apartments, including a man named Tremus and Weaver's brother, Dante Graves, that he did not like Berry "taking [their] licks," or selling drugs in their territory. Lewis also declared, "He can't eat up here. * * * We got to take care of it."

{¶ 8} As Berry stood near his parked car, Weaver made arrangements to purchase marijuana. While she was talking to Berry, Minor and Lewis approached. Minor appeared to limp, which indicated to her that he might have been concealing a weapon in his pants. Minor told Weaver not to buy marijuana from Berry. Berry complained that she could buy from whomever she chose. Weaver testified that Lewis then accused Berry of "stealing licks again," or stealing marijuana customers.

{¶ 9} As the argument continued, Weaver began to walk away, and she heard Lewis instruct Minor, "Do what you got to do." Minor used two hands to retrieve a "big gun" from his pants. Lewis drew a handgun. Weaver testified, "It kind of happened fast. They pulled they stuff out, and that's-I kind of seen [Berry] trying to go for his,

then they just started shooting, but it was too late." She heard very loud reports followed by less "powerful" ones. She saw Berry "all balled up" and ran for her apartment.

{¶ 10} Minutes later, Graves and Minor demanded to be admitted to Weaver's apartment. She refused to admit them but observed Minor hand a rifle to her brother. Despite being only feet away from the shooting, she too did not immediately inform the police of what she had seen.

{¶ 11} Hasson Graham, who had known Lewis for six years, had been incarcerated with Lewis at the Hamilton County Justice Center. At trial, he testified that Lewis had admitted to shooting Berry, and that Lewis had planned to implicate Diamond Johnson, Chaz Minor's brother, in the murder.

{¶ 12} Cincinnati Police Detectives Hilbert and Van Holle testified at trial about the details of their investigation, including their multiple interrogations of Lewis. As part of this testimony, they recounted statements that Lewis had made to them. In describing their questioning of Lewis, the detectives informed the jury that they had told Lewis that unnamed witnesses had identified him as one of Berry's killers.

{¶ 13} Minor testified at the trial and offered an alibi defense. Lewis did not offer a defense.

{¶ 14} At the conclusion of the trial, the jury returned guilty verdicts on the murder charge and the firearm specification. The trial court sentenced Lewis to three years' imprisonment on the firearm specification to be served consecutively to a 15-year-to-life term for the murder. These sentences were to be served consecutively to sentences imposed for separate felony offenses not at issue in this appeal. The cumulative sentence was imprisonment for 27 years to life.

(Doc. 10, Exh. 11 at 2-5) (internal footnotes omitted).

The 2005 Term of the Hamilton County Grand Jury indicted petitioner on one count of

murder as defined in Ohio Rev. Code § 2903.02(A), with specifications. (Doc. 10, Exh. 1).

The case proceeded to a jury trial and on December 16, 2005, the jury returned a finding of

guilty on the murder charge and specifications. (Doc. 10, Exh. 5). Petitioner was sentenced to

fifteen years to life imprisonment on the murder conviction, and three years incarceration on the

second firearm specification, with the first specification being merged into the second. (Doc. 10,

Exh. 7).

With the assistance of new counsel, petitioner appealed to the Ohio Court of Appeals, First

Appellate District,[3] raising the following assignments of error:

> 1. The trial court erred to the prejudice of Lewis by denying his due process right to a fair trial where the Court permitted the prosecutor to improperly introduce through evidence and opening and closing arguments prejudicial and inadmissible evidence of unproven "threats" against some state's witnesses.

> 2. The trial court erred to the prejudice of appellant's constitutional right to confrontation and in violation of Ohio law, by allowing the State to introduce hearsay statements of threats to prove the truth of the matter asserted, where the declarant was not present in court subject to confrontation and cross examination.

> 3. Lewis' Sixth Amendment Right to effective assistance of counsel was denied when (1) trial counsel failed to object to the use by the State on evidence and opening/closing arguments of alleged threats against state's witnesses; (2) trial counsel's failure to object to improper and prejudicial state's closing arguments, and; (3) trial counsel did not object and instead referenced Lewis' other bad act of being convicted of firing into a habitation.

> 4. The trial court erred to Lewis' prejudice by entering a judgment entry of conviction when the evidence was insufficient as a matter of law, and/or against the manifest weight of the evidence to sustain a conviction that Lewis was the perpetrator.

(Doc. 10, Exh. 9).

The State filed a response (Doc. 10, Exh. 10), and on March 30, 2007, the Ohio Court of

Appeals overruled all of petitioner's assignments of error and affirmed the trial court's judgment.

(Doc. 10, Exh. 11).

Petitioner filed a *pro se* appeal to the Supreme Court of Ohio and raised four propositions of

law that mirrored his assignments of error on direct appeal. (Doc. 10, Exh. 12). The State did not

---

[3] Two notices of appeal were filed on behalf of petitioner, one pro se and the other through counsel. Both were consolidated by the Court of Appeals. (Doc. 10, Exhs. 6, 8).

file a response. On October 17, 2007, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 10, Exh. 13).

Petitioner's subsequent petition to vacate or set aside judgment of conviction or sentence based on the use of an improper photo array by the police was denied by the trial court. (Doc. 10, Exhs. 14, 16). Petitioner did not appeal.

On February 19, 2008, petitioner filed the instant federal habeas corpus petition. (*See* Doc. 1). In the petition, petitioner alleges four grounds for relief:

**GROUND ONE:** Petitioner's Due Process was violated by the trial court.

**Supporting Facts:** Trial court allowed prosecutor to improperly introduce through evidence and opening and closing arguments prejudicial and inadmissible evidence of unproven "threats" against some state's witness[es]. – Where the court allows the prosecutor to refer to unproven threat allegations to witnesses it prejudices defendant. Trial court allowed death record to be observed in jury room without hearing testimony of corner (sic) to explain the language content and description of such.

**GROUND TWO:** The trial court erred to the prejudice of appellant's constitutional right to confrontation and in violation of state law.

**Supporting Facts:** The State introduced hearsay statements of threats to prove the truth of the matter asserted where the declarant was not present in court subject to confrontation and cross examination. – Introduction of statements by a declarant not present in court to be confronted and cross examined for the truth of the matter asserted violates the right of the accused under the Sixth Amendment to the U.S. Constitution and the Ohio Constitution.

**GROUND THREE:** Petitioner['s] Sixth Amendment Right to effective assistance of counsel was denied.

**Supporting Facts:** Trial counsel failed to object to the use by the State on evidence and opening and closing arguments of alleged threats against state's witness[es]; counsel failure to object to improper and prejudicial state's closing. Trial counsel did not object and allowed reference to past acts of being convicted; trial counsel did not object to the use of the coroner's report without the coroner being present to explain.

5

**GROUND FOUR**: Trial court erred by prejudice by entering a judgment entry of conviction when the evidence was insufficient as a matter of law.

**Supporting Facts**: Where the evidence presented at trial fails to prove each and every element of the charged crime beyond a reasonable doubt, it is insufficient as a matter of law to sustain a conviction, and where the record shows the jury clearly lost it way in resolving conflicts in evidence and this creates a miscarriage of justice.

(Doc. 1 at 6-10).

## II. STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a

presumption of correctness in the absence of clear and convincing evidence to the contrary. 28

U.S.C. § 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267

F.3d 524, 530 (6th Cir. 2001). This Court is bound by the state court adjudications unless those

decisions are contrary to or an unreasonable application of clearly established federal law. *Franklin*

*v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110

Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated

on the merits in state court unless the adjudication either:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in . . . [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially

6

indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

However, if a state court does not articulate the reasoning behind its decision or fails to address the constitutional issues, the federal court must look at the state court's decision and conduct an independent inquiry into whether the state court reached a decision contrary to clearly established federal law or based its decision on an unreasonable determination of the facts in light of the evidence presented. *Schoenberger v. Russell,* 290 F.3d 831, 835 (6th Cir. 2002); *Harris v. Stovall,* 212 F.3d 940, 943 & n. 1 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001). The review is not a full *de novo* review of the claims, but is deferential to the state court's determination. *Id.*

## III. PETITIONER'S CLAIMS REGARDING THE IMPROPER USE OF THE CORONER'S REPORT AS ALLEGED IN GROUNDS ONE AND THREE OF THE PETITION ARE PROCEDURALLY DEFAULTED AND WAIVED.

Petitioner's first ground for relief asserts, in part, that the "[t]rial court allowed death record to be observed in jury room without hearing testimony of corner (sic) to explain the language content and description of such." (Doc. 1 at 6). The ineffective assistance of trial counsel claim alleged in Ground Three of the petition asserts, in part, that "trial counsel did not object to the use of the coroner's report without the coroner being present to explain." (Doc. 1 at 9). Petitioner has procedurally defaulted and waived any claims relating to the use of the coroner's report at trial.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a

state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985). If the petitioner fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989).

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, *e.g.*, to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state

8

procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell,* 274 F.3d 337, 348 (6th Cir. 2001), *cert. denied,* 535 U.S. 1031 (2002) (citing *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986)).

In determining whether a state court rested its holding on a procedural default so as to bar federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000) (citing *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991); *Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir. 1991)). Normally, a federal habeas court will find that a petitioner procedurally defaulted if the last state

9

court rendering a decision makes a plain statement to that effect. *Harris,* 489 U.S. at 261. No such statement is necessary, however, if the petitioner failed to present the relevant issues to the state court. *Id.* at 263 n. 9; *see also Teague v. Lane,* 489 U.S. 288, 297-298 (1989) (plurality opinion)("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). In that event, the federal habeas court may hold the claim procedurally defaulted "if it is clear that the state court would hold the claim procedurally barred." *Harris,* 489 U.S. at 263 n.9.

If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the instant case, the Court finds that petitioner's claims regarding the use of the coroner's report at trial are procedurally defaulted because petitioner failed to raise such claims on direct appeal to the Ohio Court of Appeals or the Ohio Supreme Court and is now barred from doing so.[4] Petitioner therefore waived these claims under state procedural law. *See Lordi v. Ishee,* 384 F.3d 189, 194 (6th Cir. 2004), *cert. denied,* 546 U.S. 821 (2005) (citing *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994)); *see also Buell v. Mitchell,* 274 F.3d 337, 349 (6th Cir. 2001). This state procedural

---

[4] "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Perry,* 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 106 (1967)(syllabus).

10

law is an adequate and independent state ground which forecloses this Court's review of petitioner's federal constitutional claims in the absence of a showing of cause and prejudice. *Id.*

Petitioner has not provided any justification as "cause" for his procedural default. Since both cause and prejudice must be shown to excuse a procedural default, petitioner's failure to establish cause eliminates the need to consider prejudice. *Murray v. Carrier*, 477 U.S. 478, 494-95 (1986). Nor has petitioner shown that if his claims are not considered on the merits a "fundamental miscarriage of justice" will occur. Accordingly, petitioner's claims regarding the use of the coroner's report asserted in Grounds One and Three of the petition are procedurally defaulted and waived for purposes of federal habeas corpus review.

## IV. PETITIONER'S STATE LAW CLAIM ALLEGED IN GROUND TWO AND MANIFEST WEIGHT OF THE EVIDENCE CLAIM ALLEGED IN GROUND FOUR ARE NOT COGNIZABLE IN HABEAS CORPUS.

To the extent Ground Two of the petition alleges the trial court erred when it permitted the State to introduce hearsay statements of threats to prove the truth of the matter asserted where the declarant was not present in court in violation of the Ohio Constitution, petitioner raises an issue of state law only that is not cognizable in this federal habeas corpus proceeding. A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.), *cert. denied*, 488 U.S. 866 (1988); *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied*, 488 U.S. 1011 (1989). Therefore, this claim should be dismissed.

In Ground Four of the petition, petitioner asserts his convictions were against the manifest

11

weight of the evidence. A "manifest weight of evidence" claim, which is based on a state law concept that is "both quantitatively and qualitatively different" from a constitutional due process sufficiency of evidence standard, *see Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982), and *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (1997), *superseded by state constitutional amendment on other grounds in State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding such as this. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir.), *cert. denied,* 464 U.S. 962 (1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence–as opposed to one based upon insufficient evidence–requires the appellate court to act as a "thirteenth juror" and to review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720 (1st Dist. Ohio 1983); *cf. Tibbs v. Florida,* 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court,

12

vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

Therefore, these claims alleged in Grounds Two and Four of the petition should be dismissed as non-cognizable.

## V. THE IMPROPER ADMISSION OF WITNESS INTIMIDATION EVIDENCE CLAIM ALLEGED IN GROUND ONE OF THE PETITION IS PROCEDURALLY DEFAULTED AND WAIVED.

Ground One of the petition asserts petitioner was denied his due process right to a fair trial when the trial court permitted the prosecutor to improperly introduce through evidence and opening statement and closing argument prejudicial and inadmissible evidence of unproven "threats" against some state witnesses. On direct appeal, petitioner argued that the prosecutor improperly elicited from state witnesses Geronimo Johnson and Jamita Weaver testimony that they had been threatened and were in fear for their lives because they had come forward to cooperate with the police and testify against petitioner Lewis and his co-defendant Minor. Petitioner also argued that the prosecutor improperly referred to witness intimidation during opening and closing arguments without offering any evidence that petitioner had intimidated the witnesses or was in any way connected to the persons making the alleged threats. Petitioner contended that the repeated reference to these threats by the prosecutor were highly prejudicial and unfairly invited the jury to make the unfounded conclusion that petitioner intimidated the witnesses and must be a "bad" person who murdered Mr. Berry. (Doc. 10, Exh. 9 at 2-5).

Respondent contends this claim is procedurally defaulted and waived because petitioner never objected to the prosecutor's opening statement or closing argument concerning any alleged witness intimidation.

13

In addressing this assignment of error, the Ohio Court of Appeals ruled as follows:

## *II. Witness-Intimidation Evidence*

{¶ 15} In his first assignment of error, Lewis asserts that the trial court erred in permitting the state to introduce unproved allegations of threats made against prosecution witnesses Weaver and Johnson and to improperly comment on these allegations in its opening and closing arguments.

{¶ 16} The test for whether prosecutorial misconduct mandates reversal is whether remarks or actions were improper, and if so, whether they prejudicially affected the substantial rights of the accused. The central element of prosecutorial-misconduct analysis is "whether the conduct complained of deprived the defendant of a fair trial." Because Lewis did not object to the state's comments in opening or closing argument, our review is limited to whether the prosecutor's remarks rose to the level of plain error. Thus, to reverse his conviction, we must be convinced that Lewis would not have been convicted but for the alleged misconduct.

{¶ 17} In its opening statement, the state informed the jury of the difficulty of prosecuting violent crimes at the Fay Apartments because "[n]obody wants to get involved. Everybody is scared. Nobody wants to come forward and pinpoint somebody." At trial, both Weaver and Johnson described their fear in coming forward to identify Berry's killers. Johnson stated that he was scared about his physical well-being and relayed that his life had been "hell" since he had spoken to the police. He stated that he "was scared because of what was told to me."

{¶ 18} Weaver, then 19 years old, testified that she had no permanent address after the killing "because of my safety." Her mother, who retained custody of Weaver's children, would not let her visit because of safety concerns. On redirect examination, Weaver explained why she had not reported her knowledge of the killing immediately. She stated that it was "[b]ecause I was scared and I was still living in the Fay. And you just can't come out and tell on people if you still living in that same area and those people weren't caught."

{¶ 19} The state offered Weaver's and Johnson's fear of retribution as an explanation for their failure to come forward immediately and to counter Lewis's theory of the case that Weaver and Johnson had come forward to identify Lewis not because he had killed Berry but because of other grievances that they had with Lewis.

{¶ 20} In his opening statement, Lewis had told the jury "that behind the testimony of all these witnesses are some very questionable motives. Not only is their motivation questionable, but also their ability to see and perceive the things that they're going to testify to that they saw." Lewis and Minor then conducted extensive cross-examination of Weaver and Johnson, particularly employing their police statements to reveal their motivation to fabricate testimony.

{¶ 21} Despite being at the shooting, Weaver did not come forward until after she had had a violent dispute with her brother over custody of her children. Her brother was Minor's close friend. Similarly, Johnson was angry with Lewis for the March 31 gunfight with Hakeem, which had endangered his sister. Lewis's cross-examination of Graham revealed that he had been upset with Lewis over the theft of Graham's personal items, and that Graham stood to gain consideration for his own case in exchange for his testimony against Lewis. Lewis highlighted additional defects in the witnesses' credibility. Weaver, for example, was at the crime scene because she was attempting to buy $10 of marijuana from Berry for her 13-year-old friend.

*

*

*

{¶ 23} In *State v. Grimes,* this court acknowledged that prosecution argument about witness intimidation, while often problematic, can serve to explain why witnesses have not immediately come forward to the police with information about a murder. In light of the defense claims in this case that the witnesses "had a bone to pick" with Lewis, the prosecution did not err in commenting on witness intimidation in its opening or closing argument.

{¶ 24} Similarly, the introduction of witness-intimidation evidence was not error. Most of the evidence of threats came from the direct testimony of Weaver and Johnson. For example, Johnson testified, over multiple objections and following a sidebar discussion, that two weeks after the killing Ron Deanna and Tremus had approached him as he reported to his probation officer. They made statements to Johnson that scared him to the point that he refused to leave the office. The trial court sustained objections and carefully limited Johnson's testimony about the specific statements made by others and about his identification of either defendant as the one making threats.

{¶ 25} The evidence was proper to explain why the witnesses had not initially come forward and to rebut Lewis's contention, made in opening statement, that Weaver and Johnson had "questionable motives" and "had a bone to pick" with Lewis. The first assignment of error is overruled.

(Doc. 10, Exh. 11 at 5-8) (internal footnotes omitted).

Under Ohio law, the failure to raise a contemporaneous objection to a perceived error in the

trial court constitutes a procedural bar to review of the error on direct appeal. *Scott v. Mitchell*, 209

F.3d 854, 866 (6th Cir. 2000) (citing Ohio R. Crim. P. 52; *State v. Williams*, 51 Ohio St.2d 112, 364

N.E.2d 1364 (1977) (citations omitted)), *cert denied*, 531 U.S. 1021 (2000). Ohio courts, however,

may perform a limited review of the record to ensure that the alleged error does not amount to a plain error affecting a substantial right. Ohio Crim. R. 52(B); *State v. Ballew*, 76 Ohio St.3d 244, 254, 667 N.E.2d 369, 379 (1996). Because petitioner did not object during trial, the appeals court reviewed the claim under the plain-error standard. (Doc. 10, Exh. 7 at 5-8). The primary issue in the plain-error review is whether the outcome of the trial clearly would have been different without the error. *State v. Braden*, 98 Ohio St.3d 354, 362, 785 N.E.2d 439, 452 (2003) (citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus). As discussed above, the state appeals court found there was no plain error.

Although the Ohio Court of Appeals reviewed petitioner's claim under the plain error rule, such review did not constitute a waiver of the procedural default by petitioner. The Sixth Circuit has long held that plain-error review by the state courts does not constitute a waiver of state procedural default rules. *Seymour v. Weaver*, 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989)), *cert. denied*, 532 U.S. 989 (2001); *see also White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003); *Hinkle v. Randle*, 271 F. 3rd 239 (6th Cir. 2001). More importantly for this case, the Sixth Circuit has consistently held that "'Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice.'" *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003) (quoting *Hinkle*, 271 F.3d at 244). *Accord Seymour*, 224 F.3d at 557; *Scott v. Mitchell*, 209 F.3d 854, 866-71 (6th Cir.), *cert. denied*, 531 U.S. 1021 (2000). The Sixth Circuit views "'a state appellate court's review for plain error as the enforcement of a procedural default.'" *Mason,* 320 F.3d at 635 (quoting *Hinkle*, 271 F.3d at 244). Therefore, petitioner has procedurally defaulted this claim. *Mason*, 320 F.3d at 635.

16

The Ohio Supreme Court's subsequent unexplained decision denying petitioner leave to appeal and dismissing the appeal for lack of a substantial constitutional question must be presumed to rely on the same procedural default. *See Ylst,* 501 U.S. at 803-04; *cf. Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at * *3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Ylst* and *Levine v. Torvik,* 986 F.2d 1506, 1517 n. 8 (6th Cir .), *cert. denied,* 509 U.S. 907 (1993), and *overruled in part on other grounds by Thompson v. Keohane,* 516 U.S. 99 (1995)), *cert. denied,* 531 U.S. 1089 (2001).

Accordingly, procedural default bars consideration of Ground One of the petition absent a showing of cause and prejudice or that a "fundamental miscarriage of justice" will result if the claim is not considered.

Petitioner has failed to explain why he or his counsel failed to comply with the contemporaneous objection rule, nor has he presented any other justification sufficient to establish cause for his procedural default. Even if the Court were to construe the petition as asserting trial counsel's ineffectiveness as "cause" for the procedural default, which petitioner also raises as an independent claim in Ground Three of the petition, the Court finds the ineffective assistance of counsel claim to be without merit for the reasons explained below. Accordingly, petitioner may not rely on the ineffective assistance of counsel to excuse his procedural default.

Petitioner has asserted no other basis as cause for the default nor established a fundamental miscarriage of justice will occur in the absence of consideration of the constitutional claim raised in Ground One the petition. Accordingly, Ground One is procedurally defaulted and waived for purposes of federal habeas corpus review.

17

## VI. THE CONFRONTATION CLAUSE CLAIM ASSERTED IN GROUND TWO OF THE PETITION IS WITHOUT MERIT.

Ground Two of the petition asserts that petitioner's confrontation rights under the Sixth Amendment were violated when the trial court permitted the state to introduce hearsay statements of threats to prove the truth of the matter asserted where the declarant was not present in court subject to confrontation and cross examination.

A defendant in a criminal trial has the right to confront the witnesses called against him. U.S. Const. amend. VI. The Confrontation Clause of the Sixth Amendment secures the right of a defendant to cross-examine an adverse witness for the purpose of uncovering possible biases and exposing the witness's motivation for testifying. *See Davis v. Alaska,* 415 U.S. 308, 316-317 (1974). Because cross-examination is "the most effective method by which a defendant can test the truth of testimony given against him," *Stevens v. Bordenkircher,* 746 F.2d 342, 346 (6th Cir. 1984), the right of confrontation and cross-examination is considered "an essential and fundamental requirement" for a fair trial. *Barber v. Page,* 390 U.S. 719, 721 (1968) (quoting *Pointer v. Texas,* 380 U.S. 400, 405 (1965)). *See also Kentucky v. Stincer,* 482 U.S. 730, 739 (1987).

The admission of hearsay statements by a declarant not present or otherwise available for cross-examination at trial may trigger concerns of a possible violation of the defendant's right under the Sixth Amendment's Confrontation Clause to confront and cross-examine the witnesses against him. *See Crawford v. Washington,* 541 U.S. 36, 50-60 (2004). In *Crawford,* the United States Supreme Court held that testimonial out-of-court statements offered against the defendant to establish the truth of the matter asserted are not admissible where the defendant had no opportunity (either before or during trial) to cross-examine the witness, regardless of the reliability of the admitted statements. *Crawford,* 541 U.S. at 68-69 (abrogating *Ohio v. Roberts,* 448 U.S. 56 (1980)).

18

The Supreme Court stated, "Where testimonial evidence is at issue . . . the Sixth Amendment

demands what the common law required: unavailability and a prior opportunity for cross-

examination." 541 U.S. at 68.

The Ohio Court of Appeals rejected petitioner's confrontation clause assignment of error as

follows:

### III. Confrontation of Out-of-Court Declarants

{¶ 26} In his second assignment of error, Lewis contends that the trial court erred when it admitted evidence that unidentified witnesses had threatened Weaver and Johnson, and that unidentified witnesses had told Detectives Hilbert and Von Holle that Lewis and Minor had killed Berry. Without an opportunity to confront these out-of-court declarants, Lewis claims, he was deprived of his Sixth Amendment rights in violation of the rule announced in *Crawford v. Washington*.[11]

n.11. (2004), 541 U.S. 36, 124 S.Ct. 1354.

{¶ 27} The Sixth Amendment to the United States Constitution states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." In *Crawford v. Washington*, the United States Supreme Court equated witnesses with those who "bear testimony" against the accused and thus make "a declaration or affirmation * * * for the purpose of establishing or proving some fact."[12]

n.12. Id. at 51 (quotation omitted).

{¶ 28} After reviewing the historical antecedents of the Confrontation Clause, including the principal evil the clause was meant to remedy, the "use of ex parte examinations as evidence against the accused,"[13] the Supreme Court concluded that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one that the Constitution actually prescribes: confrontation."[14]

n. 13. Id. at 50.

n. 14. Id. at 68-69.

{¶ 29} The Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."[15] The Court overruled, in part, its previous decision in *Ohio v. Roberts*,[16] which had permitted the admission of statements made by unavailable witnesses against criminal defendants if the statements bore "adequate 'indicia of reliability.'"[17]

19

n. 15. Id. at 53-54.

n. 16. (1980), 448 U.S. 56, 100 S.Ct. 2531.

n. 17. See *Crawford*, 541 U.S. at 40, 124 S.Ct. 1354; see, also, *State v. Lee*, 162 Ohio App.3d 648, 2005-Ohio-3395, 834 N.E.2d 825, at ¶ 14 (*Crawford* also appeared to overrule *White v. Illinois* [1992], 502 U.S. 346, 112 S.Ct. 736, which held that hearsay was admissible under the Confrontation Clause as long as the hearsay had a sufficient guarantee of reliability).

## What Statements Are Testimonial?

{¶ 30} In *Crawford* and its progeny, the Court drew a distinction between testimonial and nontestimonial hearsay, and limited its holding to the former.[18] The right to confrontation does not extend to nontestimonial hearsay[19] because that form of hearsay does not implicate the "Sixth Amendment's core concerns."[20] "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether."[21] Thus the threshold inquiry in our analysis is whether the challenged out-of-court statements in this case were testimonial in nature and needed to be tested by confrontation.

n. 18. See *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354.

n. 19. See *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, at ¶ 21.

n. 20. *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354.

n. 21. Id. at 68.

{¶ 31} While the *Crawford* court declined to "spell out a comprehensive definition of 'testimonial,' " it stated that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."[22] In *State v. Nix*, this court explained that a testimonial statement could be broadly defined as being the result of an "official examination."[23] In subsequent decisions, the United States Supreme Court and the Ohio Supreme Court have refined the definition of a testimonial statement to include statements "made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'"[24] Thus statements made to police without an ongoing emergency are testimonial "when the circumstances objectively indicate that * * * the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[25]

n.22. Id. at 68.

n. 23. 2004-Ohio-5502, at ¶ 73.

n. 24. *State v. Stahl*, paragraph one of the syllabus, quoting *Crawford* at 52.

n. 25. *Davis v. Washington* (2006), --- U.S. ----, ----, 126 S.Ct. 2266, 2273-2274.

## Nontestimonial Statements Made to Weaver and Johnson

{¶ 32} Lewis first argues that the trial court erred when it allowed hearsay evidence of threats against Weaver and Johnson when those making the threats-presumably out-of-court declarants-had not been available for confrontation and cross-examination.

{¶ 33} While Weaver did relate the facts of her brother's attack on her, she did not testify about any specific statement made by another threatening retribution if she testified against Lewis or Minor. In response to the state's questioning, however, Johnson began to relate to the jury the substance of threatening statements made to him by Tremus and Deanna outside the probation office. But the trial court sustained each of Lewis's five prompt objections to these hearsay statements. Johnson was warned not to relate what others had said, and the jury was told that the statements "are not in this case." Error cannot be predicated on objections that have been sustained by the trial court.[26]

n. 26. See *State v. Austin* (Dec. 17, 1986), 1st Dist. No. C-860148; see, also, *State v. Davie*, 80 Ohio St.3d 311, 1997-Ohio-341, 686 N.E.2d 245, at ¶ 98.

{¶ 34} The majority of Weaver's and Johnson's remaining testimony recounted their own fears for their safety based upon incidental comments by those in their community and upon their understanding of life in the Fay Apartments. The testimony was based largely on their direct observations, or it was not offered for its truth, but for its effect on Weaver and Johnson to explain why they had not initially come forward.

{¶ 35} These remaining statements did not threaten to bring into court the ex parte "abuses the Confrontation Clause targeted."[27] "[O]ff-hand, overheard remark[s]" and "casual remark[s] to an acquaintance," unlike statements made to the police, do not implicate the Sixth Amendment's "core concerns."[28] Therefore, Weaver's and Johnson's statements were nontestimonial statements for purposes of *Crawford* and were not barred even though Lewis did not have the opportunity to confront the out-of-court declarants.[29]

n. 27. *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354

n. 28. Id.

n. 29. See *State v. Minor*, 2007-Ohio-312, at ¶ 21.

## Testimonial Statements Made to Police Detectives

{¶ 36} Lewis next challenges the in-court testimony of police detectives who recounted their questioning of Lewis. Lewis has identified only two statements by the detectives that implicated his right to confront out-of-court witnesses against

21

him.[30]

n. 30. See App. R. 16(A)(7) (appellant is required to include, in his
brief, references in the record relating to the alleged error).

{¶ 37} During his cross-examination, Detective Hilbert stated, based upon "the
person that we got the information from," that Minor had stuck the rifle he used to
shoot Berry back into his pant leg and had thus "limped" away from the car.

{¶ 38} During Detective Von Holle's direct examination by the state, he recounted
his questioning of Lewis. During the questioning, Lewis had implicated Diamond
Johnson, Chaz Minor's brother, and Styles Hummons as Berry's murderers. He told
the detective that he had given .45-caliber ammunition, similar to that recovered at
the crime scene, to Hummons before Berry's murder. The state then asked the
detective, "Did you confront Mr. Lewis with the fact that there had been
eyewitnesses that placed him at the scene firing at [Berry]?" Detective Von Holle
answered, "I did." Detective Von Holle continued, "I told Larry Lewis there were
eyewitnesses to himself and Chaz Minor at the scene of the crime. * * * I told him *
* * witnesses say that it wasn't Diamond that walked up here. It was Chaz Minor.
And witnesses say this wasn't Styles Hummons that walked up here, it was you that
walked up there and shot him." Lewis maintained that Diamond Johnson and
Hummons had killed Berry.

{¶ 39} Lewis did not object to these hearsay statements.[31] Failure to object to the
admission of evidence at trial ordinarily constitutes a waiver of any objection upon
appeal.[32] Thus, for any such error to be cognizable on appeal, it would have to rise to
the level of plain error.[33] Even if such an error is a constitutional one, we review it
under a plain-error analysis.[34] To constitute plain error, (1) there must be an error,
(2) the error must be an "obvious" defect in the trial proceedings, and (3) the error
must affect "substantial rights."[35] The Ohio Supreme Court has interpreted this final
element to mean "that the trial court's error must have affected the outcome of the
trial."[36]

n. 31. We note that Lewis raised, and the trial court sustained, an
objection to the detective's subsequent characterization of whether
Lewis had intended to kill Berry.

n. 32. See Evid. R. 103(A)(1).

n. 33. See Evid. R. 103(D) and Crim.R. 52(B).

n. 34. See State v. Lee, 2005-Ohio-3395, at¶ 10, and *United States v.
Cromer* (C.A.6, 2004), 389 F.3d 662, 672 (applying plain-error
analysis to a Sixth Amendment violation).

n. 35. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.
2d 1240.

n. 36. Id.

{¶ 40} The out-of-court statements brought into court by Detectives Hilbert and Von

Holle were testimonial for purposes of analysis under the Sixth Amendment and must have been subject to confrontation before their admission.[37] An objective witness would reasonably have concluded that statements that he or she had made to police detectives, at some considerable time after the event, identifying the perpetrators of a murder would have been available for use at a later trial,[38] or would have been used to establish or prove past events potentially relevant to later criminal prosecution.[39] Indeed a statement made to the police "that describes criminal activity is almost always testimonial."[40]

n. 37. But, see, *State v. Minor*, 2007-Ohio-312, at ¶ 22 (holding, without discussion, the same statements to be nontestimonial).

n. 38. See *State v. Stahl*, paragraph one of the syllabus.

n. 39. See *Davis v. Washington*, --- U.S. at ----, 126 S.Ct. at 2273-2274.

n. 40. *United States v. Cromer*, 389 F.3d at 675 (quotation and citation omitted).

{¶ 41} The state does not assert that the statements were not testimonial in nature. Rather the state correctly notes that the Confrontation Clause does not prohibit the introduction of all out-of-court testimonial statements by witnesses who are unavailable and have not been subject to confrontation. In *Crawford,* the Court stated that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."[41] Ohio and federal courts have permitted the introduction of testimonial statements not subjected to prior confrontation where the testimony merely provided background information or a context for the investigation,[42] explained a detective's conduct while investigating a crime,[43] gave meaning to the otherwise admissible responses of the defendants,[44] or served solely to impeach a witness.[45] In many of these instances, in ruling on a contemporaneous objection to the admission of the out-of-court statements, the trial court informed the jury that the statements were not being offered for the truth of the matter asserted and instructed the jury on the constitutionally permissible use of the statements.[46]

n. 41. *Crawford* at 36, fn. 9, citing *Tennessee v. Street* (1985), 471 U.S. 409, 414, 105 S.Ct. 2078; see, also, State v. Jordan, 167 Ohio App.3d 157, 2006-Ohio-2759, 854 N.E.2d 520, at ¶ 47.

n. 42. See *State v. Keene*, 9th Dist. No. 06CA008880, 2006-Ohio-6676, at ¶ 24.

n. 43. See *State v. Woods* (Aug. 17, 2006), 10th Dist. No. 05AP-704, appeal not accepted for review, 112 Ohio St.3d 1443, 2007-Ohio-152, 860 N.E.2d 767, and *State v. Djuric*, 8th Dist. No. 87745, 2007-Ohio-413, at ¶ 47.

n. 44. See *State v. Smith*, 162 Ohio App.3d 208, 2005-Ohio-3579, 832 N.E.2d 1286, at ¶ 13 (8th Dist.); see, also, *United States v. Sexton*

(C.A.6, 2005), 119 Fed. Appx. 735, 741-743.

n. 45. See *State v. Jordan* at ¶ 47.

n. 46. See, e.g., *United States v. Sexton*, 119 Fed.Appx. at 743, and *State v. Woods*, supra.

{¶ 42} Here the state contends on appeal that the statements were not offered for their truth but rather "to explain how the investigation led [the detectives] to Lewis and Minor," or to explain "what actions [the detectives] took as a result of these statements."[47] We disagree.

n. 47. Appellee's Brief at 11-12.

{¶ 43} The detectives had already focused on Lewis and Minor as the murderers at the time of the questioning. The "information" statement that Detective Hilbert told the jury about came from at least the second round of questioning Lewis. Lewis's trial counsel was present during one of the interrogations. The "you walked up there and shot him" statement made by unknown witnesses and introduced in Detective Von Holle's testimony occurred during a third questioning of Lewis on October 25, 2005.

{¶ 44} Unlike those situations where a confidential informant relays to police the defendant's incriminating statements, here the witness statements-that Lewis and Minor had murdered Berry-were made outside of Lewis's presence and thus could not have been offered to give a context for his own words or actions. Unlike statements that serve only to explain how certain milestones in the investigation came to pass, the witnesses' testimonial statements here were used to show that the state knew that Lewis and Minor had killed Berry, and that Lewis should have told the truth and confessed to killing Berry or identified the true killer. This was the very heart of the state's case. The exclusion of ex parte examinations as evidence against the accused is the primary aim of the Confrontation Clause.[48] Thus, the admission of the testimony was error.

n. 48. See *State v. Shisler*, 1st Dist. Nos. C-050860 and C-050861, 2006-Ohio-5265, at ¶ 13, citing *Crawford* at 50.

{¶ 45} But in light of the lack of a definitive pronouncement from the highest courts, as well as the rapidly developing case law on the application of *Crawford* to police interrogations, the error was not an obvious one when it was made.[49] More importantly, the error did not affect the outcome of the trial. Unlike the situation where the only identification testimony is adduced from an unavailable out-of-court declarant not subject to confrontation, here the live in-court testimony of two witnesses provided independent evidence of Lewis's guilt. Moreover, Lewis's failure to make a timely objection precluded the state from offering an alternative justification for the testimonial statements. The failure also foreclosed the trial court from the opportunity to correct and avoid any error by giving a limiting or cautionary instruction to the jury.

> n. 49. See *State v. Barnes*, 94 Ohio St.3d at 28, 2002-Ohio-68, 759
> N.E.2d 1240.

> {¶ 46} As the other evidence in this case convincingly showed that Lewis was guilty,
> it was not plain error to admit the challenged evidence. The assignment of error is
> overruled.

(Doc. 10, Exh. 11 at 8-16).

Respondent correctly points out that Ground Two of the petition attacks only the out-of-

court statements of threats and does not attack the testimonial statements made to the police

officers.[5] This Court must determine whether the Ohio Court of Appeals unreasonably applied the

Supreme Court's decision in *Crawford*, the "clearly established Federal law" for purposes of

AEDPA review, or reached a decision contrary to *Crawford*, in holding that the admission of

statements concerning threats to witnesses Johnson and Weaver did not violate petitioner's

Confrontation Clause rights. *See* § 2254(d)(1).

The Ohio Court of Appeals determined that the challenged out-of-court statements were not

testimonial and therefore not subject to the right of confrontation. This conclusion is not contrary

to, nor an unreasonable application of *Crawford*.

The Confrontation Clause does not apply to non-testimonial statements. *See Davis v.*

*Washington*, 547 U.S. 813, 823-26 (2006). *See also Whorton v. Bockting*, 549 U.S. 406, 420 (2007)

---

[5]The Court notes that even if petitioner raised a Confrontation Clause claim with respect to the statements made to the police officers, such claim would be procedurally defaulted and waived. As determined by the Ohio Court of Appeals, petitioner failed to object to the hearsay statements at trial and therefore violated Ohio's contemporaneous objection rule. Since the Ohio Court of Appeals reviewed the claim only for plain error, such review did not constitute a waiver of the procedural default by petitioner. *Seymour*, 224 F.3d at 557. Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review and petitioner has shown neither cause nor prejudice, nor that the failure to consider such claim would result in a fundamental miscarriage of justice. Therefore, this claim would be waived for purposes of habeas corpus review.

("[T]he Confrontation Clause has no application" to "out-of-court nontestimonial statement[s].").

The introduction of non-testimonial statements at trial does not implicate Confrontation Clause

concerns. The Supreme Court in *Crawford* stated that Confrontation Clause is concerned with

"testimony," which "is typically [a] solemn declaration or affirmation made for the purpose of

establishing or proving some fact," and noted that "[a]n accuser who makes a formal statement to

government officers bears testimony in a sense that a person who makes a casual remark to an

acquaintance does not." 541 U.S. at 51(internal quotation marks omitted).

While the *Crawford* Court did not define "testimonial," it did provide some guidance on the

types of "testimonial" statements subject to the Confrontation Clause:

> [1] *ex parte* in-court testimony or its functional equivalent-that is, material such as
> affidavits, custodial examinations, prior testimony that the defendant was unable to
> cross-examine, or similar pretrial statements that declarants would reasonably expect
> to be used prosecutorially; [2] extrajudicial statements contained in formalized
> testimonial materials, such as affidavits, depositions, prior testimony, or confessions;
> [and][3] statements that were made under circumstances which would lead an
> objective witness reasonably to believe that the statement would be available for use
> at a later trial.

*Id.* at 51-52 (internal quotations and citations omitted). In determining whether a statement is

testimonial for evidentiary purposes, the Court must determine if "a reasonable person in the

declarant's position would anticipate his statement being used against the accused in investigating

and prosecuting the crime." *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir. 2004).

In addition, the "admission of a testimonial statement in and of itself is not enough to

trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay–in

other words, it must be offered for the truth of the matter asserted." *United States v. Pugh,* 405 F.3d

390, 399 (6th Cir. 2005) (citing *Cromer,* 389 F.3d at 676). Therefore, petitioner cannot prevail on

26

any Confrontation Clause claim stemming from the admission of Weaver's or Johnson's out-of-court statements unless those statements were "testimonial in nature" and were offered as hearsay to prove that they were actually threatened and that petitioner was somehow involved in the intimidation of these witnesses. *See id.*

In this case, Weaver's and Johnson's out-of-court statements concerning threats made to them were not testimonial in nature. The statements do not qualify as previous court testimony or the equivalent, or extra-judicial statements made in formalized testimonial materials, such as affidavits. *Crawford*, 541 U.S. at 51-52. Nor were such statement made under circumstances which would lead to a reasonable expectation that they would be used against petitioner in his later prosecution, such as a police interrogation directed at establishing the facts of a past crime. *Id. See also Davis*, 547 U.S. at 826. Moreover, the statements at issue were not admitted for the truth of the matter asserted, *i.e.*, that Weaver and Johnson were actually threatened or to insinuate a link between petitioner and the threat-makers. Rather, the out-of-court statements were offered to explain the reluctance of the witnesses to come forward to offer their assistance to police. *Crawford,* 541 U.S. at 59 n. 9 ("The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.). Petitioner's theory of the case was that each of these witnesses had an axe to grind against petitioner and did not come forward immediately after the killing because they had not actually witnessed it. The "threat" testimony was elicited to contradict petitioner's theory and to explain the witnesses' initial reluctance in coming forward. Weaver's and Johnson's testimony concerning threats is not testimonial hearsay under *Crawford* and did not implicate petitioner's Sixth Amendment right of confrontation. Therefore, the Court finds the Ohio Court of Appeals' decision was neither contrary to, nor an unreasonable

application of *Crawford*, and concludes that Ground Two of the petition should be denied.

## VII. PETITIONER'S INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM RAISED IN GROUND THREE OF THE PETITION IS WITHOUT MERIT.

Ground Three of the petition alleges that trial counsel was ineffective because he failed to object to the prosecutor's questions and argument concerning threats of intimidation against witnesses Weaver and Johnson, and to the reference to past acts of firing into a habitation in a separate event prior to the murder.

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *Id*. at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id*. at 688. Under the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id*. at 694.

The Ohio Court of Appeals addressed petitioner's ineffective assistance of trial counsel claim on the merits and determined that counsel was not deficient in his representation and that petitioner's defense was not prejudiced by counsel's performance:

28

{¶ 47} In his third assignment of error, Lewis contends that he was denied the effective assistance of counsel when his trial counsel failed to object to the witness-intimidation evidence and argument and to object to argument concerning the charge involved in Lewis's separate prosecution for discharging a firearm into Montoya Johnson's habitation. To prevail on a claim of ineffective assistance of trial counsel, an appellant must show first that trial counsel's performance was deficient and, second, that the deficient performance was so prejudicial that he was denied a reliable and fundamentally fair proceeding.[50] A reviewing court will not second-guess trial strategy and must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[51]

> n. 50. See *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104
> S.Ct. 2052; *Lockhart v. Fretwell* (1993), 506 U.S. 364, 369-370, 113
> S.Ct. 838; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d
> 373, paragraph three of the syllabus.

> n. 51. See *State v. Mason,* 82 Ohio St.3d 144, 157-158, 1998-Ohio-
> 370, 694 N.E.2d 932.

{¶ 48} Here, experienced trial counsel had a clear strategy to discredit the state's identification witnesses-Weaver and Geronimo Johnson-and to offer an alternative explanation for their identification of Lewis. Counsel also filed a motion in limine to restrict the use of Lewis's discharge-into-a-habitation offense and to exclude inquiry at trial about Lewis asking Graham how to beat a lie-detector test. He strenuously objected to the hearsay components of the threat testimony and conducted a spirited defense. After reviewing the entire record, we hold that counsel's efforts were not deficient and that Lewis was not prejudiced in any significant way. The result of the trial was reliable and fundamentally fair. The third assignment of error is overruled.

(Doc. 10, Exh. 11 at 16-17).

The Ohio Court of Appeals correctly cited and applied the two-part standard of review established in *Strickland* for evaluating ineffective assistance of counsel claims. As the Ohio Court of Appeals reasonably determined, counsel's challenged conduct did not fall below an objective standard of reasonableness and did not prejudice petitioner's defense under the applicable two-part *Strickland* standard.

29

The threat evidence did not constitute inadmissible hearsay as it was not introduced for the truth of the matter, but instead to explain the reason for the witnesses' delay in coming forward with evidence of petitioner's involvement in the murder. Therefore, the defense attorney's failure to assert a meritless objection at trial does not constitute the ineffective assistance of counsel. *See Alder v. Burt*, 240 F. Supp.2d 651, 670 (E.D. Mich. 2003) (citing *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999)). *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Counsel's failure to object to admissible evidence did not prejudice petitioner's defense.

Moreover, the Court of Appeals reasonably concluded that trial counsel exercised reasonable trial strategy in presenting petitioner's defense. In this case, counsel's decision to not oppose the evidence that petitioner fired into a habitation was a matter of trial strategy. Specifically, that issue was the subject of a pretrial motion in limine. However, prior to voir dire, counsel for petitioner, with petitioner's consent, withdrew the motion. (Doc. 10, Tr. 67). Counsel determined that strategically, that evidence may be helpful in petitioner's defense. (Doc. 10, Tr. 68). Consistent with that strategy, counsel argued in closing that petitioner took responsibility for the previous days' shooting into a habitation, but would not take responsibility for something he did not do, *i.e.,* commit murder. (Tr. 823). Counsel also argued that the shell casings found at the murder scene were not consistent with those fired from petitioner's gun the day before. (Tr. 836- 837). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690. Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance, and petitioner in this case has failed to overcome the presumption that the challenged

30

conduct of counsel was a matter of strategy. *Strickland,* 466 U.S. at 689.

Nor has petitioner established that he was prejudiced by the admission of the evidence to which counsel failed to object. The two eyewitnesses, Weaver and Johnson, identified petitioner as a participant in the murder of Berry, and both were unknown to each other prior to coming forward. (Tr. 374-381; 457-466). In addition, Graham, the jail-house informant, testified that petitioner admitted to the shooting. (Tr. 552-53). In light of this and the other evidence presented in the case, it is highly unlikely that the witness intimidation and firing into a habitation evidence had a prejudicial impact on the jury's verdict in this case.

Petitioner has failed to establish that the Ohio Court of Appeals' decision is unreasonable so as to justify federal habeas corpus relief. For the reasons detailed by that court, as well as the reasons cited above, this Court concludes that petitioner has failed to establish the ineffective assistance of counsel under the two-prong *Strickland* test.

## VIII. PETITIONER'S SUFFICIENCY OF THE EVIDENCE CLAIM ASSERTED IN GROUND FOUR OF THE PETITION IS WITHOUT MERIT.

Ground Four of the petition asserts that petitioner's murder conviction is not supported by sufficient evidence in violation of his right to due process. On appeal to the Ohio Court of Appeals, he argued there was no credible evidence establishing his guilt. (Doc. 10, Exh. 9 at 8-9).

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship,* 397 U.S. 358, 364 (1970). In analyzing claims of insufficient evidence, the Court must determine whether "after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-319.

On habeas corpus review, the federal court conducts an independent review of the state court record in analyzing petitioner's sufficiency of the evidence claim. *Nash v. Eberlin*, 437 F.3d 519, 525 (6th Cir. 2006). However, the Court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "*Jackson* makes clear that 'a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *O'Hara v. Brigano,* 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 326). In addition, circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *See Jackson,* 443 U.S. at 326; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v. Collins,* 100 F. Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews*, 319 F.3d at 788.

The First District Court of Appeals overruled petitioner's insufficiency of evidence claim as follows:

> {¶ 49} In his fourth assignment of error, Lewis challenges the weight and the sufficiency of the evidence adduced to support the murder conviction. A review of

32

the record fails to persuade us that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[52] The jury was entitled to reject Lewis's theory that there was no credible evidence that he had shot Kevin Berry. As the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact to determine, the jury, in resolving conflicts in the testimony, could properly have found Weaver's and Johnson's identification testimony credible.[53]

> n. 52. See *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

> n. 53. see *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 50} The test for the sufficiency of the evidence required to sustain a conviction was enunciated by the United States Supreme Court in *Jackson v. Virginia.*[54] The relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[55]

> n. 54. (1979), 443 U.S. 307, 99 S.Ct. 2781.

> n. 55. See *id.* at 319; see, also, *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, at ¶ 36.

{¶ 51} As the record reflects substantial, credible evidence from which the trier of fact could have reasonably concluded that all the elements of the charged crime had been proved beyond a reasonable doubt, including that Lewis had purposely killed Berry with a firearm, the assignment of error is overruled.

(Doc. 10, Exh. 11 at 17-18).

Upon review of the entire record, this Court agrees with the finding of the state court of appeals that the evidence supports a finding of guilt beyond a reasonable doubt. This case rested in large part on the credibility of witnesses Geronimo Johnson and Jamita Weaver. Mr. Johnson testified that on the night of the murder, he observed three people arguing, petitioner, the victim,

and another individual whom he was unable to identify. (Tr. 373). He testified that although it was night, there were lights on. (Tr. 373). He recognized petitioner's voice. (Tr. 374). The gist of the argument was that the victim did not belong at the Fay apartments selling drugs. (Tr. 375). He observed petitioner pointing his finger at the victim then produce a gun. (Tr. 377, 378). Mr. Johnson took the woman and child with him to a safe place in the back of the apartment, then heard gun shots. (Tr. 379). The first shot fired was "a loud blast." (Tr. 380). The shots that followed sounded distinct as from another gun (Tr. 380), supporting the inference that more than one gun was involved in the killing. He then observed petitioner and another person looking over the victim "to see if the job was finished." (Tr. 381).

Jamita Weaver testified that on the day of the murder there was a cookout behind her apartment at which petitioner attended. (Tr. 441-42). She overheard petitioner speaking with another person about the victim selling marijuana at the apartment complex. (Tr. 447-48). Petitioner stated the victim should not be allowed to sell drugs up there and "we got to take care of it." (Tr. 448). Later that evening, after the cookout was over, Ms. Weaver decided to buy drugs from the victim who was standing in the parking lot. (Tr. 450-51). She approached the victim and made the transaction. (Tr. 452). While she was standing with the victim, petitioner and his co-defendant Minor approached. (Tr. 453-54). She observed Minor walking with a limp, which she understood to mean he had a gun stuck down his pants. (Tr. 454-55). Minor asked her why she was buying drugs from the victim, and that he was going to tell Weaver's brother. (Tr. 455). The victim responded that Weaver could buy drugs from whomever she wanted. (Tr. 456). Petitioner responded, "You stealing licks again" meaning taking away drug business. (Tr. 456). They started arguing amongst themselves and Weaver turned to leave, telling the victim to "come holler at me,"

34

meaning to visit her, when they were done. (Tr. 456). The victim patted her butt, which angered petitioner and Minor. (Tr. 457). Petitioner then stated, "Do what you got to do." (Tr. 457). Minor pulled out a shotgun and petitioner withdrew a handgun, then started shooting. (Tr. 458-59). Weaver observed the victim "all balled up" and say "ow." (Tr. 460). She heard two different kinds of guns being fired. (Tr. 460). She ran into her apartment and locked the door. (Tr. 461). Shortly after the shooting, Minor and Weaver's brother came to her door demanding to be let in, but she refused. (Tr. 462-465).

There was additional evidence presented from Hassan Graham, the jail-house informant, who testified that petitioner admitted to the shooting. (Tr. 552-53). In addition, the forensic evidence supported the finding that the victim was shot with more than one gun. (Tr. 316-324).

Each witness was subjected to vigorous cross-examination by defense counsel who attempted to cast doubt on their credibility and their motivation for testifying against petitioner. The jury could reasonably have believed the testimony of Johnson, Weaver, and Graham, while discrediting petitioner's contrary statements made to police, and on habeas review, this Court may not reweigh the evidence and reassess the credibility of the witnesses. *O'Hara,* 499 F.3d at 500; *Matthews*, 319 F.3d at 788. In fact, the Court must presume that the jury resolved the conflicting evidence in favor of the prosecution in weighing the evidence in this case. *O'Hara*, 499 F.3d at 499, 500. When viewed in the light most favorable to the prosecution, the identification testimony of Ms. Weaver and Mr. Johnson, as well as the testimony of jailhouse informant Graham and that of the testifying police detectives, was sufficient to establish the essential elements of murder beyond a reasonable doubt.

There was sufficient evidence from which any rational trier of fact could find petitioner guilty of murder beyond a reasonable doubt. When viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra,* and for the reasons discussed by the state appellate court, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's conviction for murder.

Therefore, the sufficiency of evidence claim alleged in Ground Four of the petition is without merit and should be denied.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to petitioner's claims regarding the improper use of the coroner's report alleged in Grounds One and Three of the petition and the witness intimidation evidence alleged in Ground One of the petition which this Court has concluded are waived and thus barred from review on procedural grounds because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[6] A certificate of appealability should not issue with respect to the remainder of the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this

---

[6] Because this Court finds that petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim. *See Slack,* 529 U.S. at 484.

Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

Date: 6/5/09

Timothy S. Hogan
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LARRY LEWIS,
Petitioner,

Civil Action No. 1:08-cv-114

Beckwith, J.
Hogan, M.J.

vs.

WARDEN, TOLEDO CORRECTIONAL
INSTITUTION,
Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within **fifteen (15) days** after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☒ Agent ☐ Addressee<br>B. Received by ( *Printed Name* )   C. Date of Delivery |
| 1. Article Addressed to:<br><br>Larry Lewis 515-117<br>Toledo Corr. Inst.<br>2001 East Central Avenue<br>Toledo, OH 43608 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)* ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7002 3150 0000 8388 4612 |

PS Form 3811, August 2001     Domestic Return Receipt     102595-01-M-2509

1:08cv114 (Doc. 11)